921 F.2d 278
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lisa MORAN, Plaintiff-Appellant,
v.
MCI TELECOMMUNICATIONS CORPORATION, Defendant-Appellee.
 No. 89-2163.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 23, 1990.
Decided Dec. 21, 1990.
 
 Before WOOD, JR., and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff-appellant, Lisa Moran ("Moran"), brought an action against her former employer, defendant-appellee, MCI Telecommunications Corporation ("MCI"), alleging that MCI engaged in sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e et seq. Count I of Moran's amended complaint alleged that MCI improperly denied her promotion to a senior management position based upon her gender. Count II alleged MCI's subsequent termination of Moran constituted sex discrimination. After a bench trial, the district court found in favor of MCI and we now affirm.
 
 
 2
 The following factual account is drawn from the extensive findings of fact entered by the district court at the conclusion of the trial. In June 1985, Moran was hired as manager of office automation for MCI's Chicago office. Her responsibilities included assessment of MCI's computer needs and approval of requests made by various departments for office automation equipment. Following a reorganization at MCI, the departments of office automation and internal communications were placed under the supervision of Gordon Gray ("Gray") who was Director of Management Information Services for the Midwest Division.
 
 
 3
 Gray created the position of Senior Manager of Internal Communications in April 1986. This Senior Manager would oversee the departments of office automation, voice communications and data communications. Gray established as qualifications for the position a strong management background and experience in all three areas. Gray concluded that none of his existing managers (including Moran) possessed the management skills or experience in all three areas. Gray then contacted Alfred Knable ("Knable") regarding the position. Knable had been head of the data and voice communications department at Beatrice, Gray's previous employer, and Knable had supervised eight to ten employees. Knable was then hired for the Senior Manager position and became Moran's immediate supervisor.
 
 
 4
 In May 1986, Gray and Knable made the decision to terminate Moran's employment. This decision was based on numerous complaints regarding Moran made to both Gray and Knable. The problems with Moran related to her unresponsiveness to the needs of other departments and her difficulty in dealing with people. There was substantial evidence at trial to support MCI's contention that it terminated Moran due to her lack of interpersonal skills and not based upon her gender.
 
 
 5
 The record is replete with instances of complaints against Moran by members of other departments of MCI. In October 1985, members of the Legal and Regulatory Department of MCI complained in writing to Moran regarding her failure to respond to their requests for equipment. In January 1986, Gray discussed a memorandum with Moran in which a secretary complained to Moran about a delay in responding to a request to repair a word processor and complained that Moran had refused to return his phone calls. Also in early 1986, Gray received a complaint from MCI Midwest Division President Ron Spears concerning the abrupt removal, without notice, of the personal computers of four executive secretaries who worked for Spears and three vice presidents. Spears expressed concern that Moran's handling of the situation had seriously impaired productivity in his office. Throughout 1986 Gray received numerous complaints from MCI employees regarding Moran's failure to return phone calls and her unresponsiveness to requests for equipment.
 
 
 6
 Moran was the team leader in a joint project with IBM to assess MCI's needs for computer equipment and recommend solutions to MCI's top management. Gray received complaints from an MCI team member and also an IBM representative that Moran was not being cooperative with other members of the task force and that her attendance at meetings was sporadic. In addition, Gray received a complaint from the IBM representative that Moran had abruptly walked out of a meeting without explanation and failed to return.
 
 
 7
 In May 1986, the head of the Legal and Regulatory Department of MCI requested a meeting with Gray regarding the problems her department was having with Moran in obtaining a printer for an employee in her department, Eric Smokler ("Smokler"). Smokler had requested a particular type of computer printer and had sought Moran's approval to obtain the printer. Moran informed Smokler that the printer he requested would not meet her standards and he would need to document the justification for this exceptional equipment. Smokler provided Moran with the necessary justification in writing, but Moran persisted in refusing Smokler's request. Due to Smokler's inability to obtain computer equipment, he worked evenings and weekends in order to use the computers of other employees.
 
 
 8
 Gray then asked Knable to handle the problem and Knable held a meeting with Smokler and Moran. At the meeting Moran told Smokler that he had failed to provide her with the written justification she had requested. Smokler then found the justification in Moran's papers and Moran responded by telling Smokler to "be quiet" or "shut up"--there were differing recollections of the exact words used. Knable informed Smokler that he would authorize Smokler's printer request and Moran told Knable the money to purchase the printer was not available. Knable responded that he would locate the money to order the printer.
 
 
 9
 Knable reported to Gray what had transpired at the meeting and recommended that Moran be terminated because of her failure to respond to the needs of the Legal and Regulatory Department and similar complaints from other departments. Gray agreed that Moran should be terminated. On May 30, 1986 Gray and Knable met with Moran to inform her that her employment was being terminated. Gray told Moran that her termination was due to her inability to respond to the needs of the other departments and the complaints received about her job performance.
 
 
 10
 Moran claims that MCI treated a male coworker more favorably than she was treated and therefore she was discriminated against on the basis of her sex. Thomas Bahr ("Bahr") was the manager of Internal Communications and was also supervised by Gray. According to Gray, Bahr also had interpersonal skills problems. However, Gray testified that Bahr accepted responsibility for complaints concerning his difficulty in dealing with people and made positive efforts to change his approach. This is in sharp contrast to Moran's response to complaints about her job performance. Gray testified that each time he suggested to Moran that she improve her responsiveness to other employees she became defensive and denied that there were any complaints about her performance. Moran took the position that the complaints registered against her were not complaints about her performance, but were actually complaints about the automation equipment. She persisted in this attitude through the trial. After being confronted with the testimony of numerous coworkers and documentary evidence of complaints regarding her ineffectiveness, Moran continued to assert that the complaints were merely complaints about equipment. Gray testified that Moran's failure to accept responsibility for her problems and her refusal to attempt to change the manner in which she dealt with people contributed to the decision to terminate her employment. Gray further testified that Bahr was retained because there were substantially fewer complaints about his performance and when confronted with a complaint he accepted responsibility and attempted to correct the situation.
 
 
 11
 Moran challenges the district court's finding that MCI did not discriminate against her on the basis of her sex. She attempts to show that this holding is clearly erroneous by attacking its factual foundation. Moran does not dispute the legal standards applied by the district court in its holding.
 
 
 12
 In a Title VII case when the plaintiff proves that gender played a motivating role in an employment decision, the defendant may only avoid liability by proving by a preponderance of the evidence that it would have made the same decision without consideration of the plaintiff's gender. Price Waterhouse v. Hopkins, 109 S.Ct. 1775, 1795 (1990). The trial judge found that Moran had not met her burden of persuasion and stated that "there was no credible evidence whatever that Moran's sex had played any part at all in either adverse employment decision [denial of promotion or termination] of which she complains." Therefore the burden of persuasion never shifted to MCI since Moran failed to prove that MCI considered her gender in deciding not to promote and then to terminate Moran.[1]
 
 
 13
 The district court based its finding that MCI's employment decisions concerning Moran were sex-blind upon factual and credibility assessments adduced at trial. The district court's determination as to whether a plaintiff has proved discrimination and the factual findings underlying that determination are subject to the clearly erroneous standard of appellate review. E.E.O.C. v. Sears, Roebuck & Co., 839 F.2d 302, 309 (7th Cir.1988).
 
 
 14
 There is abundant evidence in the record to support the district court's conclusion that MCI's decisions were sex-blind. MCI presented evidence that Moran was denied promotion to a Senior Manager position because of her inexperience in the areas of voice and data communications and her lack of management skills. The evidence also supported the district court's finding that Moran was terminated as a result of interpersonal skills problems. Numerous employees of MCI testified to difficulties in dealing with Moran and her unresponsiveness to their needs. In addition, Moran's supervisor testified that one of the reasons for her termination was her failure to accept responsibility for the complaints of other employees regarding her work. Moran continued at trial to attribute the complaints to concerns about equipment rather than her unresponsiveness and lack of interpersonal skills. Consistent with the overwhelming nature of the evidence presented at trial, the district court found that the denial of Moran's promotion and her subsequent termination were sex-blind decisions. This finding is amply supported by the record.
 
 The judgment of the district court is
 
 15
 AFFIRMED.
 
 
 
 [1]
 The district court specifically found that even if the burden had shifted, MCI proved by a preponderance of the evidence that it would have made the same adverse employment decisions regarding Moran if she had been a male employee with identical qualifications and job performance